JS-6

" O "

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| IN RE WALTER WILLIAMS, INC. | CASE NO. CV 10-4064-JST |
|---|---|
| | BAP #SV04-12548-GM |
| UNITED STATES OF AMERICA, | |
| APPELLANT, | **ORDER REVERSING THE BANKRUPTCY COURT'S CONFIRMATION ORDER AND REMANDING WITH INSTRUCTIONS** |
| vs. | |
| WALTER WILLIAMS, INC., | |
| APPELLEE. | |

1

## I.   INTRODUCTION

This matter arises out of the Chapter 11 bankruptcy case *In re Walter Williams, Inc.*, Case No. SV 07-12548-GM.  Appellant United States of America ("Government") appeals the May 11, 2010 order confirming Appellee and Debtor Walter Williams, Inc.'s ("Debtor") Second Amended Plan of Reorganization ("Plan").  Debtor does not oppose the relief sought by the Government.  (*See* Appellee's Brief, Doc. 18.)   Having reviewed the underlying papers and taken the matter under submission, the Court REVERSES the confirmation order and REMANDS the case to the bankruptcy court with the instructions set forth below.

## II.   BACKGROUND

The facts in this case are not disputed.  On July 23, 2007, Debtor filed a voluntary bankruptcy petition pursuant to Chapter 11 of the United States Bankruptcy Code. (Govt.'s Br. at 3.)  On August 23, 2007, the Internal Revenue Service ("IRS") filed a proof of claim for federal employment taxes in the amount of $402,866.98, which was comprised of a secured claim of $247,121.58, a priority claim of $149,799.24, and an unsecured general claim of $5,946.16.  (*Id.* at 4-5).  On April 3, 2008, Debtor filed an adversary complaint against the IRS that alleged causes of action for avoidance of liens and preferential treatment transfer, and asserted multiple objections to the IRS claim.  (*Id.* at 5.) The IRS subsequently filed several amended claims.

On April 25, 2008, Debtor filed its initial Plan of Reorganization.  (*Id.*)  The Government, on behalf of the IRS, objected to the initial Plan for various reasons, including that the Plan allegedly improperly attempted to designate that Debtor's payments under the Plan first apply to the trust fund portion of the IRS claim, failed to provide interest with respect to the IRS administrative claim, and failed to provide the proper rate of interest for the IRS secured claim.  (*Id.*)

On May 4, 2009, Debtor filed its First Amended Plan.  After the IRS filed an amended proof of claim, the bankruptcy court issued an order approving a stipulation

between the parties in which Debtor agreed that the secured portion the IRS claim would be $185,660.50, the amended claim would be allowed, and the adversary complaint would be dismissed. (*Id.*)

On July 10, 2009, the Government filed an objection to the First Amended Plan, contending that it was defective because it failed to provide interest on the administrative claim, failed to provide the proper interest rate with respect to the IRS secured and priority claims, and allowed Debtor to apply payments made directly by Debtor's owners to the trust fund portion of the IRS claim against Debtor. (*Id.* at 6-7.) Debtor subsequently filed the Plan, and the Government again filed objections based on the interest rate applied to the IRS secured and priority claims, the Plan's allowance of Debtor's owners to make payments on behalf of Debtor for its trust fund liability, and the Plan's allowance of Debtor to segregate its inventory for purposes of paying the IRS's secured claim. (*Id.* at 8.) The bankruptcy court held a hearing on December 15, 2009 regarding the confirmation of the Plan, and confirmed the Plan on May 11, 2010. (*Id.* at 9.) The Government filed its notice of appeal on May 28, 2010.

**III.   LEGAL STANDARD**

A district court has jurisdiction to hear bankruptcy appeals. 28 U.S.C. § 158. "On an appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." Fed. R. Bankr. P. 8013. When considering an appeal from the bankruptcy court, a district court uses the same standard of review that a circuit would use in reviewing a decision of a district court. *See In re Barof*, 105 F.3d 439, 441 (9th Cir. 1997). The Court reviews de novo the Bankruptcy Court's conclusions of law, and reviews for clear error the Bankruptcy Court's findings of fact. *In re Int'l Fibercom, Inc.*, 503 F.3d 933, 940 (9th Cir. 2007). Thus, to the extent the Court reviews a conclusion of law, it applies a de novo standard, and to the extent it reviews a finding of fact, it applies a clear error standard.

3

## IV. DISCUSSION

The Government presents four separate issues on appeal: (1) whether Debtor is entitled to credit payments made by Debtor's owners, Michael and Janeen Van Eaton, against its trust fund liability to the IRS under the Plan; (2) whether the bankruptcy court erred in confirming the part of the Plan that provides an interest rate of 3.5% on the IRS secured claim; (3) whether the "gap interest" between the date of the bankruptcy petition (July 23, 2007) and the date of the confirmation order (May 11, 2010) is discharged as a result of the language in the order that identifies a discharge of post-petition interest pursuant to 11 U.S.C. section 1141(d)(1); and (4) whether the bankruptcy court erred in confirming the part of the Plan that allows the Debtor to segregate its inventory for purposes of paying the IRS secured claim. The Court addresses each question in turn.

### A. Van Eaton's Payments Under the Plan

The Government appeals the confirmation order based on the following language that appears on page 14 of the Plan:

> The IRS secured payment amount will be reduced, for each month that a payment is due, by . . . any amount paid in that month, or preceding months commencing with March 1, 2009, by Michael or Janeen Van Eaton, or both, to the IRS on any [Internal Revenue Code] Section 6672 relating to this claim, whether or not the payment is made according to an individual Chapter 11 Plan of reorganization (in a case that may be filed in the future), or otherwise.

(R. at 332; Plan at 14.) "Section 6672" refers to trust fund penalties under 26 U.S.C. section 6672 that are assessed against "responsible persons" of a corporation. "The Internal Revenue Code requires employers to withhold from their employees' paychecks money representing employees' personal income taxes and Social Security taxes." *United States v. Energy Resources Co.*, 495 U.S. 545, 546 (1990) (citing 26 U.S.C. §§ 3102(a),

4

3402(a)). "Because employers must hold these funds in 'trust for the United States,' 26 U.S.C. § 7501(a), the taxes are commonly called 'trust fund' taxes." *Id.* at 547 (citing *Slodov v. United States*, 436 U.S. 238, 242-43 (1978)). "Should employers fail to pay trust fund taxes, the Government may collect an equivalent sum directly from the officers or employees of the employer who are responsible for collecting the tax." *Id.* at 547 (citing 26 U.S.C. § 6672).

The Government filed an objection to the Plan based, in part, on the aforementioned language, arguing, as it does here, that the Plan "links the payments that may be made by [the Van Eatons] . . . pursuant to their individual assessment of the Trust Fund Recovery Penalty (TRFP) pursuant to 26 U.S.C. Section 6672, to the amount [Debtor] must pay under the plan via a formula." (R. at 346.) At the December 15, 2009 confirmation hearing, the Government orally objected to this "linking" language, because, according to the Government, it allowed the Van Eatons to treat the Plan as "the vehicle with which they pay off" their trust fund liability, and was barred by *Energy Resources*. (R. at 387.)

Here, the Government argues that the confirmation order "includes the objectionable Plan provision linking the Debtor's Plan payments for trust fund taxes to payments by its owners who are liable for such taxes in their individual capacity." (Govt.'s Br. at 11.) The Government contends that this language "violates the letter and spirit of 11 U.S.C. sections 507[a](8) and 1129" and that the "IRS is entitled to full payment from the Debtor through the Plan." (*Id.*) Summarizing the Government's position, it objects to this "linking" language because "[t]o the extent that the trust fund portion of [Debtor's] debt is reduced by payments by the Van Eatons, the Debtor will not pay its entire debt through the Plan" because "the effect of the Debtor's Plan results in the IRS reducing the trust fund portion of the debt by any amounts paid by non-debtors, the Van Eatons," and, therefore, "if the Debtor fails to complete its Plan, the IRS is prejudiced in that is deprived of collection of the full debt, since the Van Eatons would solely for their own personal benefit cause the payment of only the trust fund portion rather than the non-trust fund taxes, for which they are not liable." (*Id.* at 12.) The Government's position,

premised on the notions that (1) the Plan directs the IRS to reduce the Debtor's trust fund liability before its non-trust fund liability, and is therefore barred by *Energy Resources*, and (2) that the Van Eatons' "personal debt for the employment taxes would be reduced dollar for dollar" by their payments through the Plan (*id.* at 12.), stems from the fact that ambiguity arguably exists between the Plan and the confirmation order.

At the confirmation hearing, the bankruptcy court rejected the portion of the Plan that allowed payments by the Van Eatons towards their personal trust fund liability to apply *also* to Debtor's trust fund liability under the Plan, and stated that it would "confirm the plan with that one modification," i.e. without that provision. (R. at 391.) The bankruptcy court noted the confirmation order would state that the particular provision on page 14 of the Plan would not be effective. (*Id.*) Based on Debtor's counsel's recommendation, however, the bankruptcy court chose to include an amendment in the order, rather than explicitly striking the language from the Plan. Thus, the confirmation order states that "Plan is hereby confirmed and approved . . . except as the Plan modified as provided in Paragraph H below." (R. at 357; Plan ¶ C.) Paragraph H states: "the Plan is modified as follows: Any payment to the IRS made under the Plan of the Debtor, or in accordance with the Plan of the Debtor, whether made by [the Van Eatons] or the Debtor itself, shall be deemed to have been made by the Debtor." (R. at 358, Plan ¶ H.1.)

Paragraph H.1's plain language resolves the Government's tangential concern that the Van Eatons' "personal debt for the employment taxes would be reduced dollar for dollar" by their payments through the Plan. Because any payment by the Van Eatons' "under" or "in accordance with" the Plan will be treated as a payment by the Debtor, the Van Eatons' will not be able to reduce their personal trust fund liability through the Plan, nor would the bankruptcy court have the authority to confirm such an arrangement. *See In re Prescription Home Health Care, Inc.*, 316 F.3d 542, 549 (5th Cir. 2002) (holding that bankruptcy courts lack jurisdiction to determine tax liabilities over non-debtors); *Quattrone Accoutants, Inc. v. IRS*, 895 F.2d 921, 926-27 (3d Cir. 1990) (holding that section 6672 liability of debtor's principal "in no way affect[s] the debtor's liability to the

1 IRS under section 6672" and therefore does not fall under "related to" jurisdiction under
2 28 U.S.C. section 1334); *United States v. Huckabee Auto Co.*, 783 F.2d 1546, 1549 (11th
3 Cir. 1986) (holding that "[t]he jurisdiction of the bankruptcy courts encompasses
4 determinations of the tax liabilities of debtors . . . [and] does not, however, extend to the
5 separate liabilities of taxpayers who are not debtors under the Bankruptcy Code" and, thus,
6 the separate section 6672 trust fund liabilities of the debtor's owners "were outside the
7 scope of the bankruptcy court's jurisdiction"); *see also In re Condel, Inc.*, 91 B.R. 79, 82
8 (B.A.P. 9th Cir. 1988) ("The Panel also takes cognizance of the rule that the Bankruptcy
9 Code generally protects only the debtor, not persons or entities related to or connected with
10 the debtor.")

11 In the Government's view, the order's language does not, however, explicitly
12 resolve the main issue on appeal: whether Debtor is entitled to credit payments made by
13 the Van Eatons against Debtor's *trust fund* liability to the IRS under the Plan.  Stated
14 another way, because the confirmation order does not explicitly nullify the language in the
15 Plan that states that the IRS's secured claim will be reduced by payments by the Van
16 Eatons or Debtor "on any [Internal Revenue Code] Section 6672 relating to this claim," the
17 Government asserts that payments made by the Van Eatons, which will be treated as
18 payments by the Debtor, would reduce the IRS secured claim's trust fund portion prior to
19 its non-trust fund portion.  The Debtor recognizes this potential ambiguity, yet misses the
20 Government's ultimate concern: "Debtor does not oppose the request of [the Government]
21 to credit all plan payments to [Debtor].  Indeed, that is what the Plan states in paragraph
22 H.1.  If [Government] wants this to be more clearly stated, [Debtor] agrees with [the
23 Government's] contention."  (Debtor's Br. at 1.)  Crediting the payments to the Debtor is
24 not the Government's concern, however; it is how the payments are credited, i.e. to
25 Debtor's trust fund versus non-trust fund liabilities.

26 The Court need resolve this ambiguity only if it would necessarily result in, as the
27 Government contends, a violation of *Energy Resources*.  The Supreme Court in *Energy*
28 *Resources* dealt specifically with the issue of whether a bankruptcy court has the authority

7

to order the IRS to apply payments made by a Debtor to trust fund liabilities rather than non-trust fund liabilities. *Energy Resources*, 495 U.S. at 549. The Supreme Court held that a bankruptcy court may do so only if it "is necessary to the success of a reorganization plan." *Id.* Thus, in order for *Energy Resources* to apply here, the Plan must order the IRS to apply payments made by the Debtor to trust fund liabilities.

The Plan does no such thing, however, and *Energy Resources* is therefore inapposite. The Court notes that nothing in the Plan or the confirmation order explicitly directs the IRS to apply payments from Debtor, or the Van Eatons on behalf of Debtor, to trust fund liabilities prior to or rather than non-trust fund liabilities. Indeed, the Government concedes this point. (Govt.'s Br. at 12 ("Debtor did not propose to designate payments").)

The Government contends, however, that the "effect" of the Debtor's Plan results in the IRS reducing Debtor's trust fund liability before the non-trust fund liability. (*Id.*) The Government fails to convince the Court why this is necessarily, or even potentially, so. The confirmation order clearly states that "[a]ny payment to the IRS made under the Plan of the Debtor, or in accordance with the Plan of the Debtor, whether made by [the Van Eatons] or the Debtor itself, shall be deemed to have been made by the Debtor." (R. at 358, ¶ H.1.) As this language makes clear, any payment received by the IRS from the Van Eatons pursuant to the Plan will be no different than any other payment made by the Debtor and, thus, payments by the Van Eatons to the IRS under the Plan will only "credit" against the Debtor's trust fund liability to the extent that *any* payment made by the Debtor would. As noted earlier, the Court concedes that some ambiguity *arguably* exists between the Plan and the confirmation order, but it is clear from a plain reading of both that the bankruptcy did not direct the IRS to allocate Debtor's payments to trust fund liability, which is the sole concern of *Energy Resources*. Because nothing in the Plan or the confirmation order states that the IRS must allocate payments received by the Debtor to trust fund rather than non trust fund liabilities, the Government's contention that the Plan

is void under *Energy Resources* because "the trust fund portion [of the IRS claim] must be reduced by any plan payment made by the Van Eatons" is unfounded.

As the Court reverses and remands on other grounds, however, for the purpose of clarity, the Court instructs the bankruptcy court in its revised confirmation order to strike the objectionable language on page 14 of the Plan, starting on line 9 with "plus" and ending on line 14 with "otherwise," so as to eliminate any potential ambiguity in that regard.

### B.  3.5% Interest Rate on IRS secured claim

The confirmation order provides for a 3.5% interest rate on the IRS secured claim. (R. at 358; Plan ¶ H.5.)  The Government argues that the IRS is entitled to receive interest on its secured claim in an amount equal to the prevailing rate at the time of confirmation as required by 11 U.S.C. section 511(b), and contends that the "bankruptcy court erred in confirming the Debtor's Plan without determining the prevailing interest rate applicable at the time of confirmation." (Govt.'s Br. at 14-15.)  Debtor does not disagree, but asks that "if the [confirmation] order is reversed, or is amended . . . that the rates set be the rates applicable on the day that the further order of the bankruptcy court is entered." (Debtor's Br. at 1.)

The Court must first determine whether the 3.5% interest rate on the IRS secured claim is a finding of fact, which the Court reviews for clear error, or a conclusion of law, which the Court reviews de novo.  As the Ninth Circuit has explained in the Chapter 12 context, when reviewing a bankruptcy court's interest rate determination, "the determination of what factors to apply in a valuation calculation . . . is an interpretation of a statute which is reviewed de novo.  However, the application of these factors to a certain case is a question of fact which is reviewed under a clearly erroneous standard." *In re Fowler*, 903 F.2d 694, 696 (9th Cir. 1990).  A "bankruptcy court should be accorded substantial deference in making . . . interest rate determinations." *Id.* (citing *In re Camino Real Landscape Maint. Landscape Contractors, Inc.*, 818 F.2d 1503, 1508 (9th Cir.

9

1987)).  Thus, the Court reviews the bankruptcy court's "approach" to setting the interest rate de novo, and its application of the approach for clear error, while recognizing that "substantial deference" shall be accorded to the bankruptcy court.

Under 11 U.S.C. section 511(a), "[i]f any provision of this title requires the payment of interest on a tax claim or on an administrative expense tax, or the payment of interest to enable a creditor to receive the present value of the allowed amount of a tax claim, the rate of interest shall be the rate determined under applicable nonbankruptcy law." 11 U.S.C. § 511(a).  Section 511(b) further states that "in the case of taxes paid under a confirmed plan under this title, the rate of interest shall be determined as of the calendar month in which the plan is confirmed."  11 U.S.C. § 511(b).

In a Chapter 11 bankruptcy, the Ninth Circuit has held that the rate of interest the debtor must pay the Government on deferred payments of federal taxes is equal to "the rate the debtor would pay a commercial lender for a loan of equivalent amount and duration, considering the risk of default and any security." *In re Camino*, 818 F.2d at 1504.  This is because 11 U.S.C. section 1129(a)(9)(C) requires that the "aggregate receipts over the payment period [must] equal the present value of its tax claims." *Id.* at 1505; *see* 11 U.S.C. § 1129(a)(9)(C).  This requires the bankruptcy court to "make a case-by-case determination of what interest rate the reorganizing debtor would have to pay [the Government] in order to obtain a loan on equivalent terms in the open market." *Id.* at 1508.  The bankruptcy court should take into account relevant factors, such as the debtor's characteristics and prevailing interest rates at that time. *Id.* at 1506-07.  "A bankruptcy court should be accorded substantial deference in these matters because it has 'almost daily experience with the rates charged by actual commercial lenders and other financier's [sic] of chapter 11 debtors.'" *Id.* at 1508 (quoting *In re F-Hi Pizza*, 40 B.R. 258, 271 (Bankr. D. Mass. 1984)).

Here, both the Plan and the confirmation order provided that the Debtor would pay 3.5% interest on the IRS secured claim.  (R. at 331, 358.)  The Government points out that, prior to confirmation, it "set forth uncontroverted evidence that the then current interest

1  rate was 6%," but that bankruptcy court effectively ignored such evidence.  (Govt.'s Br. at
2  15; R. at 167.)  With its objection to the Debtor's initial Plan, the Government submitted a
3  declaration from Patricia Berry, an Insolvency Specialist for the IRS, stating that "the
4  interest rate on tax claims paid under the Plan is set at the I.R.C. Section 6621 rate for the
5  calendar month the Plan is confirmed.  The current rate is 6% compounded daily.  The IRS
6  is entitled to the statutory rate at the time of confirmation."  (R. at 167.)

7  However, "the section 1129(a)(9)(C) rate is not the section 6621 rate as a matter of
8  law."  *In re Camino*, 818 F.2d at 1507.  It is merely a data point that a bankruptcy court
9  "may consider . . . when setting the interest rate under section 1129(a)(9)(C)."  *Id.*
10 Nonetheless, from the record, there is no evidence that that the bankruptcy court made the
11 necessary determination based on the relevant factors, i.e. the debtor's risk profile and the
12 prevailing interest rates at the time, when setting the 3.5% interest rate.  On the contrary, it
13 appears that the bankruptcy court relied solely on the proposed interest rate set forth by the
14 Debtor.  The initial Plan submitted on April 25, 2008 included the 3.5% interest rate (R. at
15 152), as did the First Amended Plan submitted on May 4, 2009 (R. at 201), Second
16 Amended Plan originally submitted on July 24, 2009 (R. at 307) and the Second Amended
17 Plan submitted on September 11, 2009 (R. at 331).  The confirmation order devotes just
18 one line to the subject:  "The interest rate to be used in connection with secured claims of
19 the IRS shall be 3.5% per annum."  (R. at 358 ¶ H.5.)

20 Establishing the applicable interest rate is a fact-based, case-by-case undertaking
21 that requires the bankruptcy court to determine the rate the debtor would pay a commercial
22 lender for a loan of equivalent amount and duration, considering the risk of default and any
23 security and other relevant factors, including, if applicable, section 6621 interest rates.  *In*
24 *re Camino*, 818 F.2d at 1504, 1507-08.  From the record, most notably the confirmation
25 order, the Court finds that the bankruptcy court committed clear error by failing to identify
26 the "approach" it must adopt to make such a determination or to apply such approach in
27 arriving at the 3.5% figure.  Instead, the bankruptcy court seemingly confirmed the 3.5%
28

11

interest rate on the IRS secured claim based solely on the Debtor's proposed plans of reorganization.

Accordingly, the Court reverses the confirmation order and remands the case to the bankruptcy court. On remand, the bankruptcy court shall employ the approach in *In re Camino* in setting forth the applicable interest rate for the IRS secured claim.

C. "Gap Interest"

The Government appeals the confirmation order based on the following language: "Except as otherwise provided in the Plan, as modified, this Order acts as a discharge and termination as of the Effective Date, of any and all liabilities and debts of, and claims against the Debtor that arose at any time before the confirmation order becomes a final order, including but not limited to, the principal amount of any claims and any and all interest accrued thereon, pursuant to 11 U.S.C. section 1141(d)(1)." (R. at 357 ¶ D.) The Government contends that as a result of this language, the IRS "gap interest" that accrued between the date of the petition (July 23, 2007) and the confirmation order (May 11, 2010) was improperly discharged. (Govt.'s Br. at 15-16.)

"Gap interest" is post-petition, pre-confirmation interest. *Miller v. United States*, 363 F.3d 999, 1001 (9th Cir. 2004). In *Miller*, the Ninth Circuit held that "gap interest" on nondischargeable tax claims is not subject to bankruptcy discharge. *Id.* at 1006-07, 1010 (holding that "the interplay between sections 1141(d)92), 523(a)(1)(A), and 507(a)(8) renders an IRS claim for unpaid withholding taxes nondischargeable by a confirmed Chapter 11 bankruptcy plan"); *see* 11 U.S.C. §§ 1141(d)(2), 523(a), 507(a)(8); *see generally Bruning v. United States*, 376 U.S. 358 (1964). Here, it is ambiguous as to whether the Plan and confirmation order, read together, attempt to discharge the IRS gap interest. Because the Court reverses and remands on other grounds, the Court instructs the bankruptcy court in its revised confirmation order to state that the Debtor's discharge does not apply to the IRS gap interest.

### D. Segregation of Inventory for Purposes of Paying the IRS Secured Claim

It is undisputed that the IRS possesses a secured claim in all of Debtor's real and personal property, including all inventory. (Govt.'s Br. at 17; R. at 212.) The Government appeals the confirmation order based on the Plan's inclusion of "segregated inventory." As the Plan states: "This Plan contemplates the set-aside, and sale, of inventory to pay the creditors due under this Plan, utilizing the values determined by the [IRS] and the Debtor in the recent valuation process (the "Segregated Inventory")." (R. at 322.) The segregated inventory consists of artwork owned by Debtor that will be sold at auction with the proceeds going towards paying creditors' claims, the first of which is the IRS secured claim. (R. at 335-36.) The Government argues that the use of segregated inventory allows Debtor "to pick, choose and separate the personal property which will be used to pay the IRS secured claim," rather than giving the IRS an interest in the entirety of Debtor's property as warranted by its secured claim.

However, it is unclear whether the Plan's allowance of the Debtor to use segregated inventory to pay the IRS secured claim necessarily suggests that the IRS loses interest in the remaining property of the estate. The Plan clearly could not limit the IRS secured claim in that respect. *See* 11 U.S.C. § 506(a)(1) ("An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . ."). The confirmation order states that "Debtor need not segregate its collateral as it provides in the Plan." (R. at 358 ¶ H.3.) The "need not" language, however, leaves open the possibility that the Debtor could segregate its inventory. Debtor does not oppose forbidding Debtor from segregating its inventory under the Plan, and agrees that paragraph H.3 "could be revised to more completely conform to the requests of [the Government]."

Accordingly, on remand, the bankruptcy court shall revise the confirmation order to specify that any use of segregated inventory, if still applicable, by Debtor to pay the IRS

1  secured claim does not limit the IRS secured claim's property interest in Debtor's estate to
2  the segregated inventory.
3  **V. CONCLUSION**
4      For the aforementioned reasons, the Court REVERSES the confirmation order and
5  REMANDS the case to the bankruptcy court with the instructions included above.
6
7
8  DATED: March 15, 2011            <u>JOSEPHINE STATON TUCKER</u>
9                                    JOSEPHINE STATON TUCKER
10                                   UNITED STATES DISTRICT JUDGE